```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

**RICHARD E. ENYART, Jr.,**

    Plaintiff,

  vs.                                                 Case No. 2:09-cv-687
                                                         Judge Smith
                                                         Magistrate Judge King

**SHERIFF JIM KARNES,** *et al.,*

    Defendants.

## REPORT AND RECOMMENDATION

This matter is before the Court for consideration of *Defendant Daniel Thacker and Daniel Waldren's Motion for Summary Judgment* ("*Defendants' Motion for Summary Judgment*"), Doc. No. 212, *Plaintiff Richard E. Enyart, Jr.'s Opposition to Defendants' Second Motion for Summary Judgment* ("*Plaintiff's Response*"), Doc. No. 220, and defendants' reply, Doc. No. 222.  This matter is also before the Court on *Plaintiff Richard E. Enyart, Jr.'s Motion for Rule 11 Sanctions against Defendants for Filing Second Motion for Summary Judgment* ("*Plaintiff's Motion for Sanctions*"), Doc. No. 221, and the *Memorandum in Opposition of Defendants Daniel Thacker and Daniel Waldren to Plaintiff's Motion for Rule 11 Sanctions* ("*Defendants' Response*"), Doc. No. 223.  For the reasons that follow, it is **RECOMMENDED** that both motions be **DENIED**.

**I.    Background**

The Court has previously set forth the background of this case:

> Plaintiff, a state inmate . . ., brings this action under
> 42 U.S.C. § 1983, alleging that he was denied due process

in connection with an alleged assault by other inmates while plaintiff was detained in the Franklin County jail.

The *Amended Complaint*, Doc. No. 76, which is signed under penalty of perjury, alleges that plaintiff was arrested by the Columbus Police on August 11, 2007 for "pandering and voyeurism"[1] and taken to Franklin County Corrections Center I ("FCCCI"). *Id*. at ¶¶ 10-11. After spending the night in a holding cell, plaintiff was moved to the fifth floor at FCCCI. *Id*. at ¶¶ 11-12. Defendant Deputy Dan Waldren allegedly walked plaintiff to his cell and said: "[W]hen the other inmates find out what you are in for you will be a dead little sick fuck – there won't be any protection here for you." *Id*. at ¶ 12. Later that day, defendant Waldren, who was allegedly accompanied by defendant Deputy Daniel Thacker, *see Affidavit of Richard E. Enyart Jr.* ("*Enyart Affidavit*"), attached to Doc. No. 183, at ¶¶ 4-9, allegedly "came to [plaintiff's] cell, yelled out [plaintiff's] name and said 'the media wants to interview you about those little kids you molested.'" *Amended Complaint*, ¶ 13. "Immediately after [defendants] left," plaintiff "was viciously attacked by nine of the ten inmates in [his] cell." *Id.*; *Enyart Affidavit*, ¶¶ 4-5.

Defendants Waldren and Thacker allegedly returned to plaintiff's cell a few minutes after the assault. *Id*. Defendant Waldren ordered plaintiff out of the cell and said: "You look like shit and smell like piss; what happened did you fall off your bunk[?]" *Id*. Plaintiff was unable to produce his "county issued items" because they were "taken by other inmates," so defendant Waldren "shut the gate and left with [defendant] Thacker." *Id*. Plaintiff was allegedly attacked again "[a]s soon as [defendants] left." *Id*. Shortly thereafter, the two defendant deputies returned to the cell and took plaintiff to the infirmary. *Id*. Plaintiff's injuries were photographed and he was taken to the hospital and treated for injuries. *Id*. at ¶¶ 14-16. A few weeks after the alleged assault, plaintiff attempted to utilize the grievance process three times, but his attempts were "ignored." *Id*. at ¶¶ 17-18.

The *Amended Complaint* asserts claims against the Franklin County Sheriff, employees of the Franklin County Sherriff's Office, and Franklin County. Only the claims against defendants Waldren and Thacker remain. *See Opinion and Order*, Doc. No. 92 (dismissing the Franklin County Sherriff); *Opinion and Order*, Doc. No. 112 (dismissing

---

[1] Plaintiff was actually charged with two felony counts of "illegal use of a minor" in violation of R.C. § 2907.323. *Affidavit of Major Michael K. Herrell*, Doc. No. 52-1, at ¶ 7; Doc. No. 52-2.

2

> Franklin County); *Opinion and Order*, Doc. No. 148 (dismissing defendant Mandy Miller). On December 17, 2012, defendant Thacker filed a motion to dismiss or, in the alternative, for summary judgment, Doc. No. 180. The Court denied that motion without prejudice to renewal, noting that the discovery completion date had not yet passed and that plaintiff was seeking additional discovery pursuant to Fed. R. Civ. P. 56(d). *Opinion and Order*, Doc. No. 189 (adopting without objection *Report and Recommendation*, Doc. No. 187). Discovery closed on June 30, 2013. *Scheduling Order*, Doc. No. 178. [Defendants filed a motion for summary judgment] on July 30, 2013, *i.e.*, one day prior to the deadline for filing dispositive motions. *Scheduling Order*, Doc No. 178.

*Report and Recommendation*, Doc. No. 195, pp. 1-3, adopted and affirmed *Order*, Doc. No. 197.

The Court denied defendant's July 30, 2013 motion for summary judgment, reasoning that there were genuine issues of material fact regarding whether the failure to protect plaintiff from risk of harm was sufficiently serious and whether defendants knew of and disregarded a substantial risk of serious harm to plaintiff. The Court specifically found that "the facts alleged by plaintiff and sworn to in his affidavit, if proven, could constitute a violation of a constitutional right that was well established at the time the events at issue in this case are alleged to have occurred." *Report and Recommendation*, Doc. No. 195, p. 12, adopted and affirmed *Order*, Doc. No. 197. The Court thereafter appointed counsel for plaintiff and issued a *Preliminary Pretrial Order*, Doc. No. 200, on April 15, 2014, reopening discovery and requiring that motions for summary judgment be filed, if at all, no later than October 31, 2014. *Id*. *Defendants' Motion for Summary Judgment* was filed on October 31, 2014.

*Defendants' Motion for Summary Judgment* relies primarily on the same evidence as did their July 30, 2013 motion, except that

3

defendants now also proffer the *Affidavit of Major Chad Thompson* ("*Thompson Affidavit*"), attached to *Defendants' Motion for Summary Judgment* as Exhibit C. The *Thompson Affidavit* and the attached "Franklin County Sheriff's Office Daily Schedule Main Jail A Co." show that neither defendant worked the first shift, i.e., from 7:00 a.m. until 3:00 p.m., at FCCCI on August 12, 2007. According to defendants, this evidence demonstrates that neither defendant could have escorted plaintiff to his cell on the fifth floor at FCCCI or made the comment that plaintiff would be at risk of injury and without protection if the other inmates found out the nature of the charges against plaintiff. *Defendants' Motion for Summary Judgment*, p. 9.

## II. *Defendants' Motion for Summary Judgment*

### A. Standard

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient

4

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party must support the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "'[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" *Gover v. Speedway Super Am., LLC*, 284 F. Supp. 2d 858, 862 (S.D. Ohio 2003) (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d

5

108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.* *See also* Fed. R. Civ. P. 56(c)(3).

    **B.**    **Discussion**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 merely provides a vehicle for enforcing individual rights found elsewhere and does not itself establish any substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). A *prima facie* case under § 1983 requires evidence of (1) conduct by an individual acting under color of state law that (2) causes (3) the deprivation of a right secured by the Constitution or laws of the United States. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

In the case presently before the Court, plaintiff alleges that, while incarcerated as a pre-trial detainee at FCCCI, he was assaulted by other inmates as a result of defendants' deliberate indifference to

6

his safety needs. Plaintiff is proceeding against defendants Waldren and Thacker in their individual capacities. *Plaintiff's Response*, p. 3.

The *Amended Complaint* alleges that defendants Waldren and Thacker violated plaintiff's Eighth Amendment rights[2] by making other prisoners aware of plaintiff's criminal charges, by failing to protect plaintiff from known risks posed by other inmates, and by failing to remove plaintiff from his cell after he was initially assaulted. *See Amended Complaint*, ¶¶ 21-27. Defendants move for summary judgment on the basis of qualified immunity.

The doctrine of qualified immunity provides that, in civil suits for monetary damages, government officials performing discretionary functions are generally shielded from liability for monetary damages "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) (citing *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011)). "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson v.*

---

[2] As a pretrial detainee at the time of the allege acts, plaintiff's claims actually arise under the Due Process Clause of the Fourteenth Amendment; however, plaintiff's claims are analyzed by reference to the standard of the Eighth Amendment, which is applied to pretrial detainees through the Fourteenth Amendment Due Process Clause. *See Essex v. Cnty. of Livingston*, 518 F. App'x 351, 353 n.2 (6th Cir. 2013); *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008); *Lucas v. Nichols*, 181 F.3d 102 (6th Cir. Apr. 23, 1999).

7

*Callahan*, 555 U.S. 223 (2009)). A court may exercise discretion in determining which prong of the test it will first address in light of the circumstances of the case. *Pearson*, 555 U.S. at 236. "Furthermore, 'prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Bishop*, 636 F.3d at 765 (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).

To avoid summary judgment on the basis of qualified immunity, a plaintiff must establish facts sufficient for a reasonable jury to determine that defendants violated a constitutional right. "To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety." *Bishop*, 636 F.3d at 766 (citing *Farmer*, 511 U.S. at 834). *See also Leary v. Livingston Cnty.*, 528 F.3d 438, 442 (6th Cir. 2008) (citing *Farmer*, 511 U.S. at 834). Plaintiff has satisfied these requirements.

According to the *Amended Complaint*, defendant Waldren, who plaintiff contends was accompanied by defendant Thacker, *see Enyart Affidavit*, ¶¶ 4-9, allegedly "came to [plaintiff's] cell, yelled out [plaintiff's] name and said 'the media wants to interview you about those little kids you molested.'" *Amended Complaint*, ¶ 13. *See also Enyart Deposition*, Doc. No. 219-1, *PAGEID* 1508. Defendant Waldren allegedly confirmed that other inmates' knowledge of the charges against plaintiff created an objectively serious risk of harm when he

8

stated: "[W]hen the other inmates find out what you [i.e., plaintiff] are in for you will be a dead little sick fuck – there won't be any protection here for you." *Amended Complaint*, ¶ 12; *Enyart Deposition*, *PAGEID* 1506. According to plaintiff, this statement was made by defendant Waldren as he escorted plaintiff to his cell on the fifth floor of FCCCI. *Amended Complaint*, ¶ 12.

Defendant Waldren denies characterizing plaintiff as a child molester, *Affidavit of Daniel Waldren*, attached to *Defendants' Motion for Summary Judgment* as Exhibit A, at ¶ 8, defendant Thacker denies being aware of any such statement by defendant Waldren, *Affidavit of Daniel Thacker*, attached to *Defendants' Motion for Summary Judgment* as Exhibit B, at ¶ 8, and both defendants argue that, in any event, plaintiff has not presented evidence sufficient to establish that other inmates heard any such alleged statement. *Defendants' Motion for Summary Judgment*, p. 3.

Defendants also present evidence that neither worked from 7:00 a.m. until 3:00 p.m., at FCCCI on August 12, 2007. *Thompson Affidavit*, ¶¶ 5-7. *See also Affidavit of Daniel Waldren*, ¶ 4; *Affidavit of Daniel Thacker*, ¶ 5. This evidence is consistent with plaintiff's January 4, 2013 assertion that defendants "were second shift deputies assigned to the fifth floor" at FCCCI, *Enyart Affidavit*, ¶ 3, and contradicts plaintiff's October 1, 2014 deposition testimony that it was defendant Waldren who escorted plaintiff to his cell on the fifth floor on the morning of August 12, 2007. *See Enyart Deposition*, *PAGEID* 1504-05. Defendants argue that they are entitled to summary judgment because neither defendant could have escorted

9

plaintiff to his cell on the fifth floor at FCCCI on the morning of August 12, 2007, nor could they have made the comment alleged by plaintiff, *i.e.,* that plaintiff would be at risk of injury and without protection if the other inmates found out the nature of the charges against plaintiff. *Defendants' Motion for Summary Judgment*, p. 9.

Plaintiff has offered some evidence that it was defendant Waldren who escorted him to the fifth floor cell and who confirmed that other inmates' knowledge of the charges against plaintiff created an objectively serious risk of harm. *See Enyart Deposition*, PAGEID 1506. *See also Amended Complaint*, ¶ 12. Although defendants may have pointed to a potential inconsistency in plaintiff's allegations and evidence regarding the time of day that plaintiff was escorted to the fifth floor of FCCCI, the Court finds that plaintiff has nevertheless raised an issue of fact as to whether the failure to protect him from risk of harm was sufficiently serious. *See Leary*, 528 F.3d at 442 (finding objectively serious the harm facing an inmate plaintiff when deputies told two inmates that the plaintiff had been charged with raping a nine-year-old girl).

In order to establish the subjective component of a "constitutional violation based on failure to protect, a plaintiff . . . must show that prison officials acted with 'deliberate indifference' to inmate health or safety." *Bishop*, 636 F.3d at 766 (quoting *Farmer*, 511 U.S. at 834). An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

10

must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. at 842. "However, a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." *Bishop*, 636 F.3d at 767 (citing *Farmer*, 511 U.S. at 841-42). Where, as here, multiple defendants assert qualified immunity as a defense, courts must consider whether each individual defendant had a sufficiently culpable state of mind. *Id*. ("The district court erred in this case by failing to evaluate the liability of each Deputy individually.") (citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 541 (6th Cir. 2008) ("Where . . . the district court is faced with multiple defendants asserting qualified immunity defenses, the court should consider whether each individual defendant had a sufficiently culpable state of mind."); *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)).

As to defendant Waldren, plaintiff has presented evidence that this defendant made statements suggesting that he was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that he "dr[ew] the inference." *See Farmer*, 511 U.S. at 837. Once other inmates learned of the nature of the charges against plaintiff, defendant Waldren had reason to know that plaintiff would need "protection." *See Amended Complaint*, ¶ 12 ("[W]hen the other inmates find out what you [*i.e.*, plaintiff] are in for you will be a dead little sick fuck – there won't be any

11

protection here for you."); *see also Enyart Deposition*, PAGEID 1506. Defendant Waldren allegedly nevertheless persisted in informing plaintiff's cellmates of the charges against plaintiff. *See Amended Complaint*, ¶ 13; *Enyart Deposition*, PAGEID 1508. It is true that defendants have presented evidence to the contrary. Defendant Waldren denies making the statement to plaintiff that he would be in danger if other inmates learned of the charges, and defendants have produced some evidence that it could not have been defendant Waldren who made the alleged statement. *See Affidavit of Major Chad Thompson*, ¶¶ 5-7; *Defendants' Motion for Summary Judgment*, p. 9. Nevertheless, there exists a genuine issue of material fact in this regard. *See Leary*, 528 F.3d at 442 (denying summary judgment based on qualified immunity where the defendant deputy told inmates about the plaintiff's charges with reason to believe the plaintiff would need protection after the inmates found out about the charges).

As to defendant Thacker, plaintiff has presented evidence that defendant Thacker "did not speak," but "was present at all times" when defendant Waldren made the alleged statement that the media wanted to interview plaintiff about the charges against him and visited plaintiff's cell before and after both alleged assaults. *Enyart Affidavit*, ¶¶ 4-9. Notably, plaintiff has offered evidence that defendant Thacker heard defendant Waldren tell other inmates that plaintiff had molested children and that defendant Thacker was with defendant Waldren after the first alleged assault when defendant Waldren "acknowledged" plaintiff's injuries, told him that he "look[ed] like shit and smell[ed] like piss," asked if plaintiff had

12

fallen off his bunk, "laughed" at plaintiff, and then returned plaintiff to the same cell in which he had allegedly been initially assaulted. *See id.*; *Amended Complaint*, ¶ 13; *Enyart Deposition*, *PAGEID* 1507. Defendants challenge the evidence offered by plaintiff and they have proffered evidence in stark contrast to that presented by plaintiff. This dispute merely confirms, however, the existence of a genuine dispute of material fact that serves to preclude summary judgment. See *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") (citations omitted).

Furthermore, a pretrial detainee's right to be free from the deliberate indifference of jail officials is clearly established. The United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (internal quotation marks and citation omitted); *Bishop*, 636 F.3d at 766; *Leary*, 528 F.3d at 442. *See also Doe v. Bowles*, 254 F.3d 617, 620 (6th Cir. 2001); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990).

Based on the foregoing, the Court concludes that the facts alleged by plaintiff, sworn to in his affidavit, and testified to on deposition, if proven, would give rise to a violation of a constitutional right that was well established at the time the events

13

at issue in this case are alleged to have occurred.  The Court therefore cannot conclude that defendants are entitled to summary judgment on the basis of qualified immunity.  It is therefore **RECOMMENDED** that *Defendants' Motion for Summary Judgment*, Doc. No. 212, be **DENIED**.

### III. *Plaintiff's Motion for Sanctions*

*Plaintiff's Motion for Sanctions* seeks sanctions under Rule 11 of the Federal Rules of Civil Procedure.  Plaintiff argues that it was not reasonable for defendants to file *Defendant's Motion for Summary Judgment* because "1) it raises no new issue of fact the Defendants could not have presented in their first Motion for Summary Judgment; and 2) even if the thrust of the [Second] Motion For Summary Judgment were based on new information, there nevertheless plainly remain genuine issues of material fact that preclude entry of summary judgment."  *Plaintiff's Motion for Sanctions*, p. 1.  Plaintiff represents that his counsel contacted defendants on November 6, 2014, to request that defendants withdraw *Defendants' Motion for Summary Judgment*, and that he served a copy of *Plaintiff's Motion for Sanctions* on defendants on November 18, 2014.  *Id*. at pp. 1-2. Plaintiff filed his motion for sanctions on December 16, 2014, five days after he responded to *Defendants' Motion for Summary Judgment*. Nevertheless, plaintiff requests that defendants withdraw their motion "before Plaintiff's counsel is required to do any more work in response to it."  *Id*. at p. 11.  Plaintiff also argues that responding to *Defendants' Motion for Summary Judgment* "will impose a considerable cost of time on Mr. Enyart's counsel."  *Id*. at p. 9.  Plaintiff

14

requests that "the Court direct the Defendants to withdraw their second Motion for Summary Judgment or impose monetary sanctions on the Defendants pursuant to Rule 11 for the fees Plaintiff's counsel incurs in responding to it." *Id*. at p. 11.

Rule 11 "affords the district court the discretion to award sanctions when a party submits to the court pleadings, motions or papers that are presented for an improper purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the allegations and factual contentions do not have evidentiary support." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002) (citing Fed. R. Civ. P. 11(b)(1)-(b)(3)). "[T]he imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct.'" *Id*. at 517 (quoting *United States v. Kouri-Perez,* 187 F.3d 1, 8 (1st Cir.1999)). "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(b)(4).

As noted *supra*, defendants filed their motion for summary judgment on October 31, 2014. Plaintiff argues that it was unreasonable for defendants to file *Defendants' Motion for Summary Judgment* because defendants raised no new issues of fact and there "plainly remain genuine issues of material fact that preclude entry of summary judgment." *Plaintiff's Motion for Sanctions*, p. 1. Indeed, *Defendants' Motion for Summary Judgment* relies on much of the same evidence as did defendants' previous motion for summary judgment. However, defendants also presented new evidence that suggests that it

15

was not defendant Waldren who made the statement to plaintiff. *See Affidavit of Major Chad Thompson*, ¶¶ 5-7; *Defendants' Motion for Summary Judgment*, p. 9. Defendants also pointed out apparent inconsistencies between plaintiff's deposition, in which he testified that defendant Waldren made the alleged statement in the morning, *see Enyart Deposition*, PAGEID 1504-05, and his affidavit, in which he averred that defendant Waldren was a second shift employee. *See Enyart Affidavit*, ¶ 3. Although the Court concludes that genuine issues of material fact remain for resolution, the Court cannot conclude that *Defendants' Motion for Summary Judgment* was filed for an improper purpose, was not warranted by existing law or a nonfrivolous extension of the law, or lacked evidentiary support. Moreover, the *Preliminary Pretrial Order*, Doc. No. 200, contemplated the possibility of additional dispositive motions and plaintiff did not seek to amend that order. Under these circumstances, the Court concludes that an award of sanctions is unwarranted.

It is **RECOMMENDED** that *Defendant Daniel Thacker and Daniel Waldren's Motion for Summary Judgment*, Doc. No. 212, be **DENIED**. It is further **RECOMMENDED** that *Plaintiff Richard E. Enyart, Jr.'s Motion for Rule 11 Sanctions against Defendants for Filing Second Motion for Summary Judgment*, Doc. No. 221, be **DENIED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28

16

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


February 25, 2015                              *s/Norah McCann King*
                                                  Norah M<sup>c</sup>Cann King
                                              United States Magistrate Judge